830

36087. Jones *et al. v.* Dupree.

Quillian, J. 1. Though the evidence of the losing party upon the material issues of the case seems to be of greater weight than that of his adversary, if there is some evidence to support the verdict it will not be disturbed.

2. Where one is employed to obtain a sponsor for a television program and produces one ready, able and willing, and who actually agrees to sponsor the program, his performance of the contract is complete. *Hardin* v. *Stansel,* 13 *Ga. App.* 22 (78 S. E. 681); *Gilmer* v. *Carnes,* 81 *Ga. App.* 555, 558 (59 S. E. 2d 292).

3. There is no ambiguity in the provision of a contract that one employed on a contingent basis to procure a particular result is to be paid, if successful in accomplishing the purpose of his employment, a specified percent of the gross amount received by his employer from the transaction.

4. The question whether a contract of employment was unenforceable as an executory agreement because indefinite became moot when the person employed had fully performed the services he was engaged to render. .

5. In a case in which the issue was whether what was said by the parties during certain conversations and negotiations amounted to a valid contract committing one party to render defined services and obligating the other party to pay him stipulated fees for such services, it would be helpful for the court to instruct the jury as to what constitutes a valid contract. But where, as in the instant case, the judge charged the jury so as to submit the issues in a practical and understandable manner, so that the jury was informed of the very questions to be decided by them, the failure to ·technically define the word "contract" and each of its elements did not constitute error.

6. The trial judge did not err in denying the motion for a new trial.

*Judgment affirmed. Gardner, P. J., Townsend, Carlisle and Nichols, JJ., concur. Felton, C. J. dissents.*

Decided April 12, 1956—Rehearing denied May 3, 1956.

*Rache Bell,* for plaintiff in error.

*J. Richmond Garland, Benjamin B. Garland,* contra.

Felton, C. J., dissenting. The plaintiff alleged that the defendants, on or about the 11th day of September, 1954, entered into an oral contract with the petitioner to procure a sponsor for said show on television, the contract being as follows: "The defendants on said date as it is said agreed to pay petitioner the sum of fifteen (15%) per cent of the gross proceeds from the sponsor of the said program but stated to petitioner that if petitioner would find a sponsor the fifteen (15%) per cent would be paid to him, the petitioner, each and every week that the sponsor

paid." The plaintiff testified: "On September 11, 1954, they asked me to try to find a sponsor for the program. . . This conversation in regard to finding a sponsor was in the presence of Mr. Jones and Mr. McIntyre and all the other salesmen we had at that time, Morgan, an Attorney, and there was a little newspaper man, Patrick Reece; there was a Mr. Tom Atkinson who is in the courtroom, who, at that time, was sales manager and my immediate superior. . . Mr. McIntyre told the group anybody who gets a sponsor for the 'Live Atlanta' would be given 15%. Mr. McIntyre never mentioned to me at that time in the presence of these people that he would try to get the Station to pay me 15%. . ." T. H. Atkinson testified for the plaintiff as follows: "I remember on or about September 11, 1954, a conversation as to a contract that was entered into between Mr. Don McIntyre, Mr. Paul Jones and Mr. DuPree. They wanted a sponsor for the 'Live Atlanta' wrestling program and we were having a sales meeting; we were all in there. They said if anybody could help them get a sponsor, they would pay 15% commission. . . There was no discussion about who would pay the 15%, just 15% commission would be paid. Mr. McIntyre made the statement there was 15% commission to be paid there if the program was sold. . ."

While there was evidence to authorize the jury to find that in their offer the defendants agreed to pay fifteen percent for the procuring of a sponsor, there was no evidence that the defendants agreed to pay fifteen percent of any ascertainable amount. The plaintiff testified that the commission would be fifteen percent of the "gross amount." There was no evidence that the parties ever agreed what this gross amount would be. The plaintiff testified that the gross amount was $500 a week, but this testimony did not relate to the terms of the contract as agreed upon by the parties thereto. The evidence showed that the sponsor paid to the television station $500 a week for the show. It also showed that the television station paid to the defendants $222.12 a week, out of which the defendants had to pay the cost of producing the show, that is, the cost of erecting the ring at the station, salary for the wrestlers, salary for the referee, etc. The plaintiff contends that the gross amount of which he was to get fifteen percent was the $500 per week paid by the sponsor to the television sta-

tion. The defendants contend, first, that there was nothing in the evidence to show what the parties agreed on as a basis for computing the fifteen percent commission; and second, that even if he be wrong in his first contention, the evidence disclosed that there were two gross amounts involved: one, the $500 per week paid by the sponsor to the television station, and two, the $222.12 paid by the station to the defendants; and that, at least, a jury question was presented as to which gross amount the parties intended. The defendants' first contention is correct. Even though the jury was authorized to find, as testified by the plaintiff, that the agreement was that he was to receive as his commission fifteen percent of the "gross amount," there was nothing in the evidence from which the jury could find what this gross amount was. If the contract was that the plaintiff's commission was to be 15% of the "gross amount" (and the jury was authorized to so find), the term "gross amount" constituted a patent ambiguity. Of course, with proper evidence before them a jury can resolve an ambiguity in a contract and arrive at the intention of the parties in reference to such ambiguity, but in the present case no such evidence was before the jury, and they had to speculate on what the parties meant by "gross amount," which they cannot do. Therefore, the verdict was without evidence to support it.